* * * * * * * * * * *
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Stanback. The appealing parties have not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Stanback with minor modifications.
 * * * * * * * * * * * EVIDENTIARY RULING
Plaintiff's motion to add evidence is DENIED within the discretion of the Full Commission.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. All parties are properly before the Commission and subject to the terms of the Workers' Compensation Act and the Commission has jurisdiction over the parties and the subject matter.
2. Plaintiff was an employee for defendant-employer Golden Corral, and the workers' compensation carrier is Key Risk Insurance Company.
3. Plaintiff sustained a fall at work on June 6, 2001.
4. Plaintiff returned to work at Golden Corral in August 2001 and worked there until January 15, 2004, at which time her total temporary disability benefits resumed.
5. Documents stipulated into evidence include the following:
 a. Stipulated Exhibit #1 — Industrial Commission Forms and Plaintiff's Medical Records
6. Other documents entered into evidence include the following:
 a. Defendants Exhibit #1 — Tarboro Chiropractic Intake Sheet
 b. Defendants Exhibit #2 — Documents from New Mexico Board of Medical Examiners
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was 50 years old as of the date of the hearing before Deputy Commissioner Stanback, and holds a tenth grade education. Plaintiff suffered a compensable *Page 3 
injury by accident on June 6, 2001, when she tripped on a crate and fell while working as a line server. The injury resulted in a compensable fracture to her left shoulder.
2. Defendants admitted compensability for the left shoulder pursuant to a Form 60 filed on June 26, 2001, and have paid all medical compensation and temporary total disability benefits to which plaintiff is entitled as a result of that injury.
3. Following the injury, plaintiff originally sought treatment with Dr. Alberto D'Empaire at Carolina Regional Orthopaedics on June 7, 2001. At that time, Dr. D'Empaire noted that plaintiff had an undisplaced fracture of the left proximal humerus.
4. Plaintiff continued to treat with Dr. D'Empaire throughout the summer of 2001. Eventually, Dr. D'Empaire diagnosed plaintiff with a tear of the rotator cuff and recommended shoulder injections. Plaintiff underwent an MRI of the left shoulder which revealed no rotator cuff tear or significant abnormalities. On October 31, 2001, Dr. D'Empaire found that plaintiff was at maximum medical improvement. Dr. D'Empaire assigned a 15% permanent partial disability rating to plaintiff's left shoulder. In addition, Dr. D'Empaire set lifting restrictions of 20 pounds for the left arm and discharged plaintiff from his care.
5. On June 13, 2002, the North Carolina Industrial Commission approved a Form 21 Agreement for Compensation for Disability which provided payment to plaintiff of $3,450.24 for her 15% permanent partial disability rating to the left upper extremity. Following her first release, plaintiff returned to work for defendant-employer where she remained consistently employed until her shoulder surgery in 2004.
6. Plaintiff testified that she complained of neck and shoulder pain to Dr. D'Empaire during his treatment of her shoulder. However, there is no evidence of these complaints in plaintiff's medical records. Dr. D'Empaire testified, and the Full Commission finds, that *Page 4 
plaintiff did not report any right shoulder pain or cervical pain on June 7, 2001, nor did she report complaints of pain in any other area, right shoulder, cervical or otherwise, up until her release from Dr. D'Empaire in October of 2001.
7. Plaintiff was unable to identify a specific occasion during which she alleges that she made these complaints. In addition, plaintiff admitted that she signed the Form 21 and accepted payment of her rating without filing any paperwork or making any written complaints related to her neck and right shoulder pain.
8. On July 5, 2003, plaintiff suffered a rear-end automobile accident. Plaintiff reported this accident to Tarboro Chiropractic Care on her visit on July 15, 2003. At that time, plaintiff began seeking chiropractic treatment.
9. On October 7, 2003, plaintiff returned to Dr. D'Empaire stating that she had pain in both her shoulders. She reported to Dr. D'Empaire that she had been treating with a chiropractor. Dr. D'Empaire scheduled an MRI for plaintiff and referred her to his partner Dr. Miller. Plaintiff underwent the MRI which showed mild disc protrusions at several levels and a disc bulge.
10. On November 7, 2003, plaintiff sought treatment with Dr. Miller for examination. Dr. Miller noted that plaintiff had pain in the right shoulder, right hand and neck and that she had previously been diagnosed with carpal tunnel syndrome. Dr. Miller diagnosed plaintiff with chronic left shoulder pain and scheduled plaintiff for facet blocks. Dr. Miller noted that plaintiff had two problems causing her pain. One problem was her shoulder and the other was her neck.
11. Dr. Miller testified that, although he related plaintiff's pain to the workplace accident of June 6, 2001, his opinion was based on plaintiff's subjective historical recollection of what happened, the pain drawing and his records, the evidence does not show there was a *Page 5 
continuum of right shoulder and neck pain stemming from the June 6, 2001 accident. Plaintiff's first reports of pain do not occur until November 2001, at least five months after the June 6, 2001 accident. Furthermore, plaintiff has no record of treatment for cervical pain or shoulder pain after that time until July 15, 2003, just 10 days after she was apparently involved in a rear-end automobile accident.
12. Subsequently plaintiff was examined by Dr. Robert Martin of Carolina Regional Orthopaedics. Dr. Martin assessed her with left subacromial shoulder pain with impingement syndrome. Plaintiff was given a Lidocaine injection and asked to return in four weeks for follow-up. Thereafter, plaintiff continued to treat with Dr. Martin through a series of facet block injections, each of which provided some relief of her left shoulder pain. On January 15, 2004, Dr. Martin performed a left shoulder arthroscopy.
13. On February 20, 2004, plaintiff presented to Dr. Melany Furimsky for evaluation of her neck and shoulder complaints. Plaintiff underwent several cervical facet blocks at the C-4, 5, 6 and 7 levels. Due to plaintiff's positive response to those blocks, she underwent a left-sided cervical facet rhizotomy at the C4, C5, C6 and C7 levels on April 6, 2004. Plaintiff underwent a right-sided rhizotomy on June 23, 2004 at the C4 through C7 levels. On July 6, 2004, plaintiff was released from the care of Dr. Furimsky.
14. On August 2, 2004, plaintiff sought treatment with Dr. Kurt Voos at the Center for Scoliosis and Spinal Surgery. Plaintiff reported a history of neck pain beginning after her June 6, 2001 accident. Dr. Voos recommended a CT myelogram and recommended that plaintiff seek treatment with a neurologist.
15. On August 17, 2004, plaintiff returned to Dr. Martin for a final evaluation and *Page 6 
rating for her left shoulder. Dr. Martin opined that plaintiff had reached maximum medical improvement and assigned a twelve percent (12%) permanent partial impairment of the left arm. He released plaintiff to return to work full duty.
16. On August 18, 2004, plaintiff sought treatment with Dr. Cynthia Lopez at Eastern Neurology and Neuromuscular Center. Dr. Lopez found no neurological deficits and returned plaintiff to the care of Dr. Miller and Dr. Voos.
17. On September 13, 2004, plaintiff began a series of cervical epidural steroid injections. Plaintiff completed the three injections on October 11, 2004. At that time, plaintiff returned to Dr. Voos who noted that plaintiff was receiving excellent pain relief from the injections. He noted that he believed that plaintiff's source of pain was the C7-T1 level. Therefore, Dr. Voos recommended a fusion at that level of the spine. At the time of the hearing, plaintiff had not sought any medical treatment since this visit with Dr. Voos.
18. Dr. Voos initially related plaintiff's neck and shoulder problems with the June 6, 2001 accident. Dr. Voos opined that if plaintiff did not have pain in her neck prior to June 6, 2001, then it was more likely related. However, Dr. Voos was presented with the following timeline: 1) plaintiff stops treatment with Dr. D'Empaire in November 2001; 2) plaintiff seeks no other treatment for cervical or shoulder pain until after a rear-end automobile accident on July 5, 2003; and 3) plaintiff then seeks medical attention for cervical and shoulder pain from her chiropractor. In response, Dr. Voos conceded that plaintiff's problems may have been more likely an aggravation from her automobile accident.
19. Under these circumstances, the evidence regarding the causation of plaintiff's alleged neck injury amounts to little more than speculation. Dr. Voos' opinion is only based on the timeline of plaintiff reported symptoms, which is not sufficient evidence. *Page 7 
20. Plaintiff sustained a rear-end automobile accident outside of the course and scope of her employment on July 5, 2003. Plaintiff began treating with Tarboro Chiropractic Care on July 15, 2003 for this automobile accident.
21. Plaintiff's testimony that the automobile accident occurred ten years prior to the chiropractic visit is not accurate or credible.
22. The greater weight of the medical evidence indicates that, if plaintiff suffered the automobile accident on July 5, 2003, the treating physicians would be unable to determine whether or not plaintiff's neck and right shoulder injuries were related to the initial compensable injury. Plaintiff's testimony that she suffered neck and right shoulder problems long before her report of them in November 2003 is not supported by the greater weight of the evidence.
23. Plaintiff returned to regular duty employment in August 2001 where she continued until her surgery in 2004.
24. Plaintiff's current failure to return to work is due to the injury suffered in the automobile accident that occurred after her original compensable injury by accident. Plaintiff has received a full duty release from her compensable left shoulder injury and has reached maximum medical improvement for that injury.
25. Plaintiff has failed to prove that she is currently disabled as a result of her compensable left shoulder injury.
26. The greater weight of the evidence shows that plaintiff's neck and right shoulder conditions are unrelated to her compensable injury.
27. There is no evidence that plaintiff made any report of neck or right shoulder pain until filing her Form 33 on December 4, 2004. That report was made outside of the time to file a claim for compensation. In light of the fact that plaintiff returned to work from her shoulder *Page 8 
injury in August 2001 and worked continuously until her surgery in January 2004, she had ample opportunity to report her complaints of shoulder and neck injuries.
28. Plaintiff did not provide written notice to defendants of her new alleged injuries nor has she provided any reason for failing to provide defendants with such notice. Plaintiff has no reasonable excuse for failing to provide defendants notice of the alleged injury.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. The person claiming the benefit of compensation has the burden of showing that the injury complained of resulted from an injury by accident arising out of and in the course of employment. Henry v. A.C.Lawrence Leather Co., 231 N.C. 477, 57 S.E.2d 760 (1950). Plaintiff failed to carry the burden of proving by competent evidence that a causal relationship existed between the work-related accident and the disability for which compensation is sought. Click v. FreightCarriers, 300 N.C. 164, 265 S.E.2d 389 (1980).
2. Plaintiff has the burden of proving disability, defined as a loss of wage earning capacity. Russell v. Lowes Product Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993). In order to meet the burden of proving disability, plaintiff must prove that she was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. Apex Cabinet Co., 305 N.C. 593,290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that she is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that she is *Page 9 
capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that she is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that she has obtained other employment at wages less than her pre-injury wages. Demery v. PerdueFarms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001); Russell v. LowesProduct Distribution, supra. Plaintiff failed to produce any evidence that she is unable to work due to her compensable left shoulder injury.
3. Plaintiff is entitled to payment of any permanent partial disability compensation for any additional permanent partial disability she may have suffered to her left upper extremity. N.C. Gen. Stat. § 97-31.
4. Plaintiff's report of right shoulder and cervical pain was not timely made. N.C. Gen. Stat. § 97-24.
5. Defendants are entitled to a credit for compensation paid to plaintiff after November 5, 2004. N.C. Gen. Stat. § 97-42.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Plaintiff's claim for her right shoulder and neck are hereby DENIED.
2. Plaintiff is entitled to payment of any permanent partial disability compensation for any additional permanent partial disability she may have suffered to her left upper extremity, subject to defendants' credit for overpayment awarded herein.
 3. Each side shall bear its own costs. *Page 10 
This the __ day of April, 2007.
 S/________________ DANNY LEE MCDONALD COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER *Page 1